No. 22-04369

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

KENNETH W. RAVENELL,

*Defendant-Appellant*.
_____

Appeal from the United States District Court
for the District of Maryland
Case No. 1:19-cr-00449
The Honorable Liam O'Grady
United States District Court for the District of Virginia,
sitting by designation in the District of Maryland
_____

**KENNETH RAVENELL'S PETITION FOR REHEARING EN BANC**
_____

Peter H. White
SCHULTE ROTH & ZABEL LLP
901 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 729-7470

Pursuant to Federal Rule of Appellate Procedure 35 and Local Rule 35, Kenneth Ravenell petitions for rehearing en banc from the August 12, 2022 Order of a panel of this Court by a 2-1 vote denying Mr. Ravenell's motion for bail pending appeal. The only contested issue was whether there exists on appeal a "close question or one that very well could be decided the other way" that would require reversal. *See United States v. Antoine*, No. 1:18CR17-1, 2021 WL 3882972, at *1 (N.D.W. Va. Aug. 13, 2021) (quoting *United States v. Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991)).

The majority's denial of bail conflicts with established precedent (including binding precedent in this Circuit), including: *United States v. Head,* 641 F.2d 174 (4th Cir. 1981) and *United States v. Pursley*, 22 F.4th 586 (5th Cir. 2022) (requiring that the jury determine upon request whether the prosecution was brought within the limitations period whenever the issue is fairly raised by the evidence); *United States v. Blair*, 661 F.3d 755 (4th Cir. 2011) and *United States v. Velez*, 586 F.3d 875 (11th Cir. 2009) (finding that the definition of "monetary transaction" under 18 U.S.C. § 1957(f) forecloses an attorney's conviction for receiving tainted funds in exchange for criminal representation); and *Yates v. United States*, 354 U.S. 298 (1957) (holding that a conviction upon a count alleging multiple theories of guilt, at least one of which is legally infirm, cannot survive absent a finding of harmless error). Here, the Government *explicitly* invited the jury to convict Mr. Ravenell of

1

conspiring to violate 18 U.S.C. § 1957 based on criminal defense fees he received on behalf of his client Leonaldo Harris—a legally infirm theory.

While motions for bail pending appeal are rarely considered en banc, Mr. Ravenell is an attorney with an otherwise spotless reputation who was convicted of a single non-violent offense whose professional life will effectively be destroyed forever the moment he surrenders himself to prison, whatever the outcome of his appeal. *See, e.g.*, Trial Tr. Vol. X at 96:9–14 (Dec. 17, 2021) (trial testimony of Davis, J. (4th Cir., Ret.): "Mr. Ravenell is a person of unquestioned good character. . . . He has the respect of judges and other lawyers, and he has really manifested, in my view over the course of his career, just everything we want in a legal professional."). All parties agree he is neither a flight risk nor a danger to the community and, therefore, requiring him to be imprisoned where there exist "close" issues on appeal is unsupportable.[1]

## STATEMENT OF FACTS

On December 28, 2021, a jury acquitted Mr. Ravenell of six charges alleging RICO, narcotics conspiracies, and obstruction of justice. The jury convicted him

---

[1] This Court has previously granted bail pending appeal for defendants convicted of non-violent offenses. *See, e.g.*, Order at 2, *United States v. McDonnell*, No. 15-4019 (4th Cir. Jan. 26, 2015) (Dkt. 39) (granting bail pending appeal where appellant was "not likely to flee or pose a danger" and appeal "raise[d] a substantial question of law or fact that, 'if decided in favor of the accused' is 'important enough' to warrant reversal or a new trial").

only of one count charging conspiracy to commit money laundering. This count alleged three conspiratorial objects, any one of which could have supported conviction if proven: (1) 18 U.S.C. § 1956(a)(1)(A)(i) (promotion); (2) 18 U.S.C. § 1956(a)(1)(B)(i) (concealment); and (3) 18 U.S.C. § 1957(a) (monetary transaction exceeding $10,000 in criminally derived property).

At trial, the Government presented evidence of money laundering involving Mr. Ravenell's receipt of proceeds from two distinct, unrelated clients charged with drug trafficking, Richard Byrd and Leonaldo Harris. *See* Trial Tr. Vol. XIII at 108:2–4 (Dec. 22, 2021) (Government summation explaining Harris was in "an entirely separate [drug] crew" with "[n]o association with Richard Byrd").

Most of the Government's evidence related solely to Byrd's marijuana operation. Byrd testified that Mr. Ravenell knowingly received drug proceeds, including for legal fees, and was an active member of Byrd's organization from 2009 to early 2014. On cross examination, though, Byrd admitted that he lied to both the district court and this Court, and that prior to his conviction and 26-year sentence, he wrote unsolicited letters acknowledging Mr. Ravenell's innocence and asserting that Mr. Ravenell had been unfairly targeted by the Government. *See* Trial Tr. Vol. V at 135:1-24, 193:10-194:3, 106:10-111:12 (Dec. 10, 2021). The jury acquitted Mr. Ravenell on *every* count that required it to credit evidence relating to Byrd. Mr. Ravenell's two codefendants were acquitted on all counts related to Byrd as well.

3

The Government also presented testimony from Harris and his friend Avarietta Bailey regarding Harris's unrelated operation. Their testimony related to Harris's drug proceeds, which Bailey collected and transferred to Mr. Ravenell to defend Harris on then-pending criminal charges. The last of these payments was made on April 25, 2014. In rebuttal closing, addressing Byrd's damaged credibility, the Government argued that the jury could reject Byrd and his cohorts' testimony and convict solely on Harris's and Bailey's testimony regarding payment of Harris's criminal defense fees with drug proceeds. *See* Trial Tr. Vol. XIV at 81:9–82:14 (Dec. 23, 2021). The Government and district court have reaffirmed this possibility post-trial. Exhibit E at 3 ("the jury *could* have convicted Mr. Ravenell on the basis of testimony of Mr. Harris and Ms. Bailey alone");[2] Gov't Resp. to Def. Sent. Mem. at 3 (Dkt. 560) ("the jury *could* convict the Defendant based on the testimony of Harris and Bailey *alone*").

Mr. Ravenell timely moved for a judgment of acquittal under Rule 29 based upon the Government's failure to establish criminal conduct within the applicable limitations period. The trial court denied this motion. During the charge conference, the defense requested a jury instruction on the applicable limitations period, which the court denied as well. *See infra* Part I.

---

[2] Exhibits to Mr. Ravenell's Motion for Bail Pending Appeal are incorporated by reference.

Neither party requested an instruction on the definition of "monetary transaction," which is an essential element of the 18 U.S.C. § 1957 conspiratorial object contained in the sole count of conviction. Accordingly, although the jury was instructed that a money laundering conspiracy under § 1957 required an "agreement to commit money laundering" and those money laundering activities could include "engag[ing] (or attempt[ing] to engage) in a monetary transaction" prohibited under § 1957, the jury was never instructed on the definition of "monetary transaction." As a result, the jury did not know that the criminal defense fees Mr. Ravenell received from Harris could not support conviction under the § 1957 conspiratorial object.

## **ARGUMENT**

**I. The Panel's Order Conflicts with Settled Fourth Circuit Law Requiring Trial Courts to Give a Limitations Instruction Where the Issue Is Fairly Raised by the Evidence.**

The panel's Order denying Mr. Ravenell bail pending appeal implicitly rejected his argument that the trial court's failure to instruct the jury regarding the statute of limitations presented "a close question or one that very well could be decided the other way." Such a finding is contrary to clear, unequivocal, and established Fourth Circuit precedent.

The parties agree that a conviction based on a conspiracy that concluded prior to July 2, 2014, was precluded under the applicable statute of limitations. As noted,

the Government argued, and the trial court agreed, that Mr. Ravenell could have been convicted solely based on the money received to represent Harris. The evidence at trial was that the final payment to Mr. Ravenell for the criminal representation of Harris pre-dated the limitations period. This evidence would support a jury finding that any conspiracy to launder the money received to defend Harris was time-barred.

Settled law holds that reversal is mandated when a jury was empowered to convict under a legally infirm theory unless the error was harmless beyond a reasonable doubt. The evidence here supported a finding that Mr. Ravenell could not be convicted on the theory that he conspired to launder Mr. Harris's legal fees in violation of the §1957 conspiratorial object because the last such payment was made on April 25, 2014, and "[a] conspiracy ends when its central purpose has been accomplished." *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1399 (4th Cir. 1993) (internal quotation marks omitted).[3]

At the charge conference, defense counsel twice requested that the jury be instructed regarding the statute of limitations. The court's refusal to give any instruction on that issue was erroneous because the conspiracy charge here relied heavily on conduct that occurred outside the limitations period. *See United States v.*

---

[3] The same argument regarding the requested limitations instruction also exists as to payments on behalf of Byrd. Byrd's last payment to Mr. Ravenell's law firm was made on January 6, 2014, before the limitations date. Exhibit G at 4. Byrd testified he did not engage in any criminal activity after he was arrested on April 29, 2014. Trial Tr. Vol. V at 74:1–3 (Dec. 10, 2021).

*Head*, 641 F.2d 174, 177–79 (4th Cir. 1981); *see also United States v. Pursley*, 22 F.4th 586, 591–92 (5th Cir. 2022). At the charge conference, the district court rejected the request for a limitations instruction because it "would confuse the jury" and "c[ould] be dealt with as a matter of law . . . post-verdict." *See* Trial Tr. Vol. XIII at 5:21–6:13 (Dec. 22, 2021). This ruling violated this Court's precedent and usurped the fact-finding role entrusted to the jury. *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 162 (4th Cir. 1992) ("issues of fact bearing on the application of a statute of limitations are submitted, as are other issues of fact, for determination by the jury").

In denying Mr. Ravenell's new trial motion, the district court adopted new reasons for its ruling that were also erroneous. The court noted that money laundering has no overt act requirement; that "there is no evidence that Ravenell ever withdrew from the conspiracy"; and that the court's instructions "contained all of the[] elements" of the charged offense. Yet defense counsel's final proposed instruction included no overt act requirement; defense counsel's request for a limitations instruction was *not* based on a withdrawal theory but rather on evidence that the alleged conspiracy terminated prior to the applicable limitations date; and whether the court's instructions included all elements of the charged offense is irrelevant to whether a limitations instruction was required.

The Government's argument that Mr. Ravenell's final proposed instruction

7

contained the wrong (more government-friendly) burden of proof—requiring proof of a timely prosecution by a preponderance of the evidence rather than beyond a reasonable doubt—is of no moment, because when this was pointed out at the charge conference, defense counsel offered to correct it. Trial Tr. Vol. XIII at 6:3–4 (Dec. 22, 2021); *see also United States v. Pursley*, 22 F.4th 586, 591–92 (5th Cir. 2022) (vacating conviction for failing to instruct on statute of limitations, noting the defense "offered to modify the instruction" after the Government argued it was not "substantially correct"). In any event, the requested instruction was a standard instruction based on established case law; defense counsel's request for the instruction, supported by evidence in the record, triggered the court's responsibility to give an instruction either using defense counsel's language or its own. *See Head*, 641 F.2d at 177–78.

The district court's error was not harmless beyond a reasonable doubt (*see United States v. White*, 810 F.3d 212, 221 (4th Cir. 2016) (citing *Neder v. United States*, 527 U.S. 1, 17 (1999) and *United States v. Ramos-Cruz*, 667 F.3d 487, 496 (4th Cir. 2012)), because there was ample evidence from which the jury could have determined the charged conspiracy terminated prior to the limitations period (which *necessarily* would have resulted in a contrary verdict). Just two months ago, this Court vacated two convictions based upon an instructional error, which the Court ruled could not be harmless because it could not conclude beyond a reasonable doubt

8

that the verdict would have been the same absent the error. *United States v. Lindberg*, No. 20-4470, 2022 WL 2335366, at *7 (4th Cir. June 29, 2022). At the least, this issue "presents a close question that could be decided either way," entitling Mr. Ravenell to bail pending appeal. *See Steinhorn*, 927 F.2d at 196. The panel's implicit finding otherwise is contrary to settled Fourth Circuit law.

II. **The Panel's Order Conflicts with Settled Fourth Circuit Law Regarding the Definition of "Monetary Transaction" Under 18 U.S.C. § 1957.**

The district court and Government agree the jury may have convicted Mr. Ravenell on the theory that he conspired to accept drug proceeds for Harris's criminal defense in violation of 18 U.S.C. § 1957, which prohibits "monetary transactions" in criminally derived property exceeding $10,000. Harris and Bailey each testified Harris's drug proceeds paid to Mr. Ravenell were solely for Harris's criminal defense. *See, e.g.*, Trial Tr. Vol. IX at 171:15–72:25, 175:21–76:8, 240:9–20 (Dec. 16, 2021). Such conduct is expressly exempt from prosecution under § 1957, which excludes from the definition of "monetary transaction" "any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution." 18 U.S.C. § 1957(f)(1); *see United States v. Blair*, 661 F.3d 755, 771 (4th Cir. 2011); *United States v. Velez*, 586 F.3d 875, 877 (11th Cir. 2009).

Neither party requested an instruction on this "safe harbor" language, but the court's failure to so instruct the jury was plain error, and the panel's failure to

9

recognize this issue as a "close" one is contrary to settled Fourth Circuit law. The district court ruled that its failure to instruct was not erroneous because: (1) when instructing on a conspiracy to launder money, the Court "is not required to instruct the jury on each definition of 18 U.S.C. § 1957," and (2) "Section 1957's 'safe harbor' provision would still not apply to Ravenell's conduct." Exhibit C at 6–7.

The district court's first rationale was incorrect because, although certain elements of the substantive crime identified as the object of a charged conspiracy are not also elements of that conspiracy, other elements are common to both the substantive offense and any conspiracy to commit that substantive offense. For example, with respect to a conspiracy to violate § 1957, the court need not instruct the jury that the defendant *completed* a prohibited monetary transaction, since he need only have *agreed to do so*. But a jury cannot convict a defendant of conspiring to engage in a prohibited "monetary transaction" if the conduct in which the defendant conspired to engage is not, in fact, a "monetary transaction" as defined in § 1957(f)(1).

The jury could not have determined whether Mr. Ravenell—an attorney accused of receiving Harris's drug proceeds for his criminal defense—conspired to engage in a prohibited "monetary transaction" since it could not have known, absent a proper instruction, what that phrase means. Although certain terms require no further explanation, the statutorily-defined phrase "monetary transaction" does, as

10

jurors would not intuit that it excludes criminal defense fees. As this Court recently held in *Lindberg*, a conviction *must* rest on the jury's determination beyond a reasonable doubt of every element of a crime, and failing to allow the jury to make such a determination is not harmless error. *See Lindberg*, 2022 WL 2335366, at *7.

The district court's second rationale—that the safe harbor provision did not apply to Mr. Ravenell—is also incorrect. Observing that the criminal defense payments were provided to Mr. Ravenell by Bailey, the court ruled, "Bailey was not in an attorney-client relationship with Ravenell, and therefore had no Sixth Amendment rights that put Ravenell's receipt of the drug proceeds from her within the safe harbor." Exhibit C at 8–9. This rationale enjoys no support in either the facts or the law of this and other Circuits.

All of the evidence at trial indicated that the funds at issue were Harris's. *See* Trial Tr. Vol. IX at 178:17–180:4 (Dec. 16, 2021) (Harris); *id*. at 236:7–12, 243:1–2, 246:18–20, 254:17–18 (Bailey). An attorney enjoys the benefit of the safe harbor regardless of whether the client personally transfers funds to his lawyer, or the money is transferred by an intermediary. *See United States v. Velez*, No. 05-20770-CR, 2008 WL 5381394, at *3 n.6, *4 (S.D. Fla. Dec. 22, 2008), *aff'd*, 586 F.3d 875 (11th Cir. 2009) ("[a] reasonable reading of the statute [§ 1957] could usually limit the scope of the exemption to transactions between a criminal defendant and his or her attorney, *or someone acting on their behalf*") (emphasis added). Any other

11

conclusion would make the safe harbor unavailable to lawyers representing incarcerated clients who cannot personally possess funds, and would read the safe harbor provision out of existence other than for cash transactions directly from a criminal defendant.

The district court's decision relied on a misapplication of this Court's decision in *Blair*, maintaining that "[i]n *Blair*, as here, the funds at issue were drug proceeds which, the Court noted, legally belonged to the United States," and "the money paid to the Defendant came from persons and entities other than criminal defendants whom the Defendant represented." Exhibit C at 8. *Blair*, however, is fully consistent with applying the safe harbor to Mr. Ravenell, and for this reason, the Panel's Order is contrary to this Court's precedent. In *Blair*, the defendant (a lawyer not acting as such in connection with the transaction) transferred a drug dealer's money to two attorneys to represent two of the dealer's associates in a drug prosecution. *See* 661 F.3d at 771. This Court explained that Blair did not qualify for the safe harbor because he "used someone else's unlawful drug proceeds to pay for counsel for others . . . [a]nd . . . took a cut of that money for himself." *Id*. However, responding to then Chief Judge Traxler's dissent and anticipating future attempts—like the district court's here—to exclude those in Mr. Ravenell's position from the safe harbor, this Court clarified that it "ha[s] never suggested that the attorneys hired . . . should come in for sanction." *Id*. at 773.

12

Because the safe harbor covered the conduct that the district court and Government concede may have formed the basis of the jury's conviction, the court had a responsibility to provide the jury the statutory definition of "monetary transaction" *with or without request*. The failure to instruct the jury on the safe harbor was plain error. *See United States v. Marcus*, 560 U.S. 258, 262–64 (2010). At the very least, the issue presents a close question.[4]

### III. The Panel's Order Is Contrary to *Yates* and its Progeny, Which Require Reversal when One of Several Conspiratorial Objects Is Legally Infirm.

Finally, the panel's Order denying Mr. Ravenell bail conflicts with *United States v. Yates* and its progeny. Regardless of the instructional errors, Mr. Ravenell's conviction cannot survive because the jury may have convicted him solely for the receipt of Harris's criminal defense fees, which cannot, as a matter of law, violate

---

[4] The Government's invocation of the "invited error" doctrine is unfounded as the defendant did not invite the error by asking a court "to take a step in a case." *See United States v. Herrera*, 23 F.3d 74, 75 (4th Cir. 1994). The defense did not ask the Court to exclude a safe harbor instruction; rather, counsel inadvertently and without strategic design failed to request the instruction. *See United States v. Day*, 700 F.3d 713, 727 n.1 (4th Cir. 2012) (invited error where defense requested instruction later objected to on appeal); *United States v. Collins*, 372 F.3d 629, 635 (4th Cir. 2004) (same). The Government's expansive interpretation of the invited error doctrine is inconsistent with federal rules and established case law in this Circuit. *See* Fed. R. Crim. P. 52(b); *United States v. Muslim*, 944 F.3d 154, 164 (4th Cir. 2019) ("where . . . a defendant does not object below to the district court's jury instructions regarding a specific count, we review for plain error"). Failure to instruct on § 1957(f)(1)'s safe harbor also falls within the doctrine's exception requiring reversal "to preserve the integrity of the judicial process or to prevent a miscarriage of justice." *See United States v. Lespier*, 725 F.3d 437, 450 (4th Cir. 2013).

§ 1957 and/or was time-barred. Under *Yates* a verdict upon a count alleging multiple theories of guilt, at least one of which is legally infirm, cannot survive absent a finding of harmless error. 354 U.S. 298, 311-12 (1957) (vacating conviction where Court could not ascertain upon general verdict returned whether jury convicted upon a timely-charged conspiratorial object).

The Government presented multiple factual theories to support the charged money laundering conspiracy (which posited three possible conspiratorial objects), including ones based on money Mr. Ravenell received to represent Byrd and money he received to represent Harris who had an "entirely separate" organization. *See* Trial Tr. Vol. XIII at 108:2–4 (Dec. 22, 2021). Mr. Ravenell's receipt of Harris's money could not have violated § 1957, and therefore could not have supported a conspiracy conviction under the § 1957 object, because it fell within the statutory "safe harbor" and/or occurred outside the limitations period. *See* discussion *supra* Parts I and II.

A *Yates* error is harmless only "[i]f that evidence is such that the jury must have convicted the defendant on the legally adequate ground in addition to or instead of the legally inadequate ground." *Bereano v. United States*, 706 F.3d 568, 577–78 (4th Cir. 2013). In other words, a conviction cannot survive where the proper and improper theories are not supported by the same evidence. *Id*. This Court has consistently reversed for *Yates*-type errors where it could not be certain the jury convicted upon a lawful theory. *See, e.g.*, *United States v. Cone*, 714 F.3d 197 (4th

Cir. 2013); *United States v. Pitt*, 482 F. Appx. 787 (4th Cir. 2012); *United States v. Ellyson*, 326 F.3d 522 (4th Cir. 2003); *Head*, 641 F.2d 174.

The Government and trial court each concede the jury may have convicted upon a theory Mr. Ravenell argues is legally infirm—Harris's payments for his criminal defense. *See* Exhibit E at 3; Dkt. 560 at 3. The possibility that Mr. Ravenell was convicted under a legally infirm theory, as the Government expressly invited the jury to do, presents a substantial issue of law and fact that warrants bail pending appeal, and the panel's implicit finding otherwise is contrary to both Supreme Court and Fourth Circuit precedent.

## **CONCLUSION**

For the foregoing reasons, Mr. Ravenell respectfully requests the Court grant rehearing en banc and grant Mr. Ravenell's motion for bail and a stay of sentence pending appeal.

Respectfully submitted,

*/s/ Peter White*

_____
Peter H. White
SCHULTE ROTH & ZABEL LLP
901 Fifteenth Street, NW, Suite 800,
Washington, DC 20005
(202) 729-7470

*Counsel for Kenneth Ravenell*

August 16, 2022

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD COUNT LIMITATIONS

I, Peter H. White, counsel for Kenneth Ravenell and a member of the Bar of this Court, certify that the attached Motion is proportionately spaced, has a typeface of 14 points or more, and contains 3,786 words.

*/s/ Peter White*

_____
Peter H. White

August 16, 2022

**CERTIFICATE OF SERVICE**

I, Peter H. White, counsel for Kenneth Ravenell and a member of the Bar of this Court, certify that on August 16, 2022, a copy of the attached Petition was filed with the Clerk and served on the parties via CM/ECF.

*/s/ Peter White*
_____
Peter H. White

August 16, 2022