**No. 22-4369**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

**UNITED STATES OF AMERICA,**

**Appellee,**

**v.**

**KENNETH W. RAVENELL,**

**Appellant.**

***Appeal from the United States District Court for the District of Maryland, Northern Division
Honorable Liam O'Grady, District Judge for the Eastern District of Virginia, Sitting by designation in the District of Maryland***

# RESPONSE TO MOTION FOR LEAVE TO FILE AMICUS BRIEF

**Philip Selden**
**Attorney for the United States**
**Acting Under Authority**
**Conferred by 28 U.S.C. § 515**

**Leo J. Wise**
**Zachary H. Ray**
**Assistant United States Attorneys**

**Derek E. Hines**
**Special Assistant United States Attorney**

**36 South Charles Street, 4th Floor**
**Baltimore, MD 21201**
**(410) 209-4800**

***Attorneys for Appellee***

**May 22, 2023**

## **Introduction**

Before his conviction by a jury for leading a money laundering conspiracy, the Appellant was a criminal defense attorney in Maryland.

On May 16, 2023, the National Association of Criminal Defense Lawyers ("NACDL"), filed a motion seeking amicus status alleging "[t]he panel majority failed to protect the rights of the accused and undermined the fundamental protections of our criminal justice system . . . " Mot. for Leave to File Amicus Brief, at 1. As the NACDL notes in its motion, it sought the Government's consent without providing the Government with its brief. *Id*. 2. Now having seen its brief, the Government does not consent to its filing for two principal reasons.

First, the NACDL does not advocate that Appellant's conduct as a criminal defense lawyer was lawful, nor does it provide perspective or insight on behalf of similarly situated criminal defense lawyers prosecuted for money laundering. Instead, the NACDL simply recycles Appellant's argument that *all* defendants should be entitled to a statute of limitations instruction even where, as the panel majority found, the defendant failed to properly request one. *Id.* (NACDL advocates to impose "the obligation on the part of trial courts and prosecutors – not just criminal defense counsel," Amicus Brief. at 1, to craft jury instructions for defenses that the defendant may decide to raise.).

Second, Philadelphia-based law firm Blank Rome seeks to represent NACDL. The filed brief, however, fails to apprise the Court that Blank Rome, among other law firms and criminal defense lawyers, directly profited from Appellant's illicit scheme to launder drug proceeds. Indeed, it is because law firms like Blank Rome do not directly accept drug proceeds that Appellant laundered his client's drug proceeds through his own firm. Then, the Appellant directed his employees to transfer the drug monies to Blank Rome and other criminal defense lawyers and firms. Appellant did this repeatedly and numerous criminal defense lawyers and law firms received hundreds of thousands of dollars in this way. *See, e.g.*, JA 3328.

Because the NACDL and its counsel are acting as an ally of the Appellant, rather than a friend of the Court, and because it fails to provide any unique information or perspective related to the Appellant's actions as a criminal defense lawyer that could help the Court, the Government does not consent to the motion.

## Argument

"The vast majority of amicus curiae briefs are filed by allies of litigants and duplicate the arguments made in the litigants' briefs, in effect merely extending the length of the litigant's brief. Such amicus briefs should not be allowed. . . The term 'amicus curiae' means friend of the court, not friend of a party." *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, C.J., chambers opinion).

The facts in this case demonstrate that NACDL, and the law firm it uses, are simply allies of the Appellant and not friends of this Court.

Ravenell began representing Richard Byrd in the early 1990s. JA299. From 2009 to 2017, the period of the money laundering conspiracy that the jury convicted Ravenell of, Byrd sold thousands of pounds of marijuana generating millions of dollars in cash. JA302.

During the money laundering conspiracy, Ravenell advised Byrd how to launder the millions of dollars of cash that Byrd's marijuana sales generated. JA307, JA314-316, JA329. At Ravenell's direction, Byrd acquired an interest in an entertainment-related business called LOC Marketing. JA307-309. Significant amounts of money in drug proceeds moved from LOC Marketing to Ravenell's law firm, Murphy Falcon & Murphy (MFM), often for the purpose of paying third parties that would not directly accept drug proceeds. JA371-374. Ravenell then set up a series of ledgers within MFM to account for the money he laundered for Byrd. One of the ledgers Ravenell set up was the called "Byrd Criminal Matter." JA382, JA388, JA428-430.

To launder money, Ravenell wired drug proceeds to law firms, including Blank Rome, which now represents NACDL. JA368-373. For example, Byrd

testified that Ravenell hired "Ian Comisky[1] . . .a tax expert out of Blank Rome in Philadelphia . . . to help [Byrd] deal with some of the tax issues around LOC Marketing[.]" JA 642. Byrd added that Blank Rome's Comisky and others were ultimately unsuccessful in resolving the tax issues with the IRS despite his and Ravenell's attempts to create a paper trail to cover up the "wash." JA984-985. Furthermore, Ravenell used comingled drug proceeds from the falsified Byrd Criminal Matter ledger to pay Blank Rome for non-descriptive "Fees" and "Professional Services" throughout the time of the money laundering conspiracy. *See* JA3328-3330 (outlining six payments to Blank Rome, totaling $67,500, between September 2011 and July 2012). Ravenell told Byrd that the money needed to be washed in this manner in order "to give us a good cover, a good base because it's an established firm." JA 3328.

Blank Rome and numerous other criminal defense firms and lawyers *literally* profited from the money laundering conspiracy that the Appellant perpetuated. And although "the fiction that an amicus acts as a neutral information broker, and not an advocate, is long gone," *Prairie Rivers Network v. Dynegy Midwest Generation*, LLC, 976 F.3d 761, 763 (7th Cir. 2020), participating in and profiting from

[1] "[Comisky] was co-chair of the white-collar practice at Blank Rome for more than three decades," before recently departing to another law firm. https://www.foxrothschild.com/ian-m-comisky

Appellant's scheme to wash the laundered funds at the heart of this appeal should disqualify it from being a friend of the court.

Setting aside NACDL and Blank Rome's apparent self-interest in this case (indeed the laundered payments to the law firm are discussed throughout the trial record and are among the bases for the defendant's conviction), the substance of NACDL's brief adds nothing different, new, or important to this appeal. NACDL merely repackages the same arguments considered—and rejected—by two different panels and this Court sitting en banc. NACDL fails to raise any additional legal argument not already found in the Appellant's *six* prior briefs: Appellant's (1) motion for bail pending appeal; (2) reply in support of motion for bail pending appeal; (3) petition for rehearing en banc on the order denying bail pending appeal; (4) appeal on the merits; (5) reply in support of appeal on the merits; and finally (6) petition for rehearing en banc on the panel decision affirming the Appellant's conviction.

NACDL primarily argues that the district court, "[f]ailing to give *any* instruction, . . . unconstitutionally prevented the jury from deciding whether the statute of limitations barred the prosecution altogether." Amicus Brief at 8. This is same argument rejected by this Court three times before. *Compare* Appellant's Mot. for Bail Pending Appeal at 7 ("[D]espite the defense requesting a statute of limitations instruction, the court refused to give any limitations instruction . . . This

was error") *with* Appellant's Pet. For Rehearing Regarding Bail at 6 ("The court's refusal to give any instruction on that issue was erroneous because the conspiracy charge here relied heavily on conduct that occurred outside the limitations period"), *with* Appellant's Opening Brief at 22 ("The district court's error here was in failing to give *any* statute of limitations instruction").

NACDL next complains that this Court's ruling is a "usurpation of the jury's authority to make all factual findings." Amicus Brief at 9. This too is the Appellant's argument in the Appellant's same terms. *Compare* Appellant's Mot. for Bail Pending Appeal at 9 ("The Trial Court Erred in Refusing to Instruct on the Statute of Limitations, Usurping the Jury's Fact-Finding Function") *with* Appellant's Pet. for Rehearing Regarding Bail at 7 ("This ruling violated this Court's precedent and usurped the fact-finding role entrusted to the jury"), *with* Appellant's Opening Brief at 11 ("Mr. Ravenell's conviction must be vacated because the jury was not properly instructed on key legal issues, which usurped its fact-finding function").

Appellant previously coordinated with NACDL's law firm to assist his co-conspirator and the coordination is evident again in NACDL's filing. NACDL's rinse-and-repeat brief is precisely the opposite purpose of amicus curiae. "The point, of course, is that an amicus curiae brief should be additive—it should strive to offer something different, new, and important." *Prairie Rivers Network*, 976 F.3d at 763.

In other cases, including one in this Circuit, NACDL advocated for criminal defense lawyers convicted of money laundering by offering perspective unique to criminal defense lawyers. *See, e.g.*, *United States v. Farrell*, 17-4488 (Doc. 70-1 at 10) (arguing that lawyers should not have "to determine the source of legal fees" because it interferes with the attorney-client relationship). The NACDL offers no such perspective here, instead recycling the Appellant's boilerplate argument regarding a statute of limitations instruction for all criminal defendants.

Moreover, just like the Appellant's arguments, these arguments also fail when regurgitated by NACDL. For example, NACDL claims the absence of a statute of limitations instruction "prevented Mr. Ravenell from advancing the defense altogether." Amicus Brief at 6. Not so—NACDL gets the order wrong. As the majority found, "Ravenell offered no affirmative evidence showing that the conspiracy was terminated . . . .") Op. at 16. Thus, there was no basis for an instruction. At no time, however, was Ravenell prevented from offering any evidence as to termination. By contrast the Government did present evidence of continuation of the conspiracy, as the panel opinion noted, *see* Op. at 17–19, although it wasn't required to.

At bottom, NACDL's brief is improperly self-interested, repetitive, and wrong as a matter of law.

Respectfully submitted,

Philip Selden
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

By: ____________/s/____________
Leo J. Wise
Zachary H. Ray
Assistant United States Attorneys

Derek E. Hines
Special Assistant United States Attorney

.

**CERTIFICATE OF SERVICE**

I certify that, on May 22, 2023, I filed a copy of this response via CM/ECF, which serves it on all counsel of record.

/s/
Leo J. Wise
Assistant United States Attorney