FILED:  July 14, 2023

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 22-4369**
**(1:19-cr-00449-LO-1)**

───────────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

KENNETH WENDELL RAVENELL,

Defendant – Appellant.

-------------------------------

NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS,

Amicus Supporting Rehearing Petition.

───────────────

O R D E R

───────────────

A member of the court requested a poll on the petition for rehearing en banc.

Judge King, Judge Gregory, Judge Wynn, Judge Thacker, and Judge Benjamin voted to grant rehearing en banc.

Chief Judge Diaz, Judge Wilkinson, Judge Niemeyer, Judge Agee, Judge Harris, Judge Richardson, Judge Quattlebaum, Judge Rushing, and Judge Heytens voted to deny

rehearing en banc. As the poll failed to garner a majority, the petition for rehearing en banc is hereby denied.

Judge Wilkinson wrote an opinion concurring in the denial of rehearing en banc.

Judge Gregory wrote an opinion dissenting from the denial of rehearing en banc, in which Judge King, Judge Wynn, and Judge Thacker joined.

For the Court

/s/ Patricia S. Connor, Clerk

WILKINSON, Circuit Judge, concurring in the denial of rehearing en banc:

With great respect to the fine dissenting panel opinion, rehearing en banc is not warranted in this case. The panel majority reached the right conclusion for the right reasons. *See United States v. Ravenell*, 66 F.4th 472 (4th Cir. 2023). Further, this is not an en banc case.

There has been no shortage of process here. The defendant in this case received a fair trial lasting three weeks, and the three members of the panel gave his appeal their conscientious attention as well. The process has been thorough and extensive.

The one point of difference between the majority and the dissent is heavily factual, and that difference does not justify convening the entire court en banc. Ravenell's main contention is that the district court erred in denying his request for a jury instruction on the five-year statute of limitations applicable to his 18 U.S.C. § 1956(h) money laundering charge. Per a pre-indictment tolling agreement, any conspiracy had to exist past July 2, 2014. Contrary to the petitioner's suggestion, the panel majority's opinion on this issue presents the application of settled propositions of circuit law, and we thus rightly decline to disturb it.

District courts deserve some discretion on whether to include particular jury instructions because instructions proceed from the evidence. Jury instructions typically come shortly before the case is submitted when district judges are in a much better position to assess the evidence before them than are we. The district court found no issue of triable

fact that would justify the instruction, and the panel majority found no abuse of discretion in its ruling.

The district court thus did not err in not giving a statute of limitations instruction in relation to Ravenell's 18 U.S.C. § 1956(h) charge. Quite beyond the erroneous nature of Ravenell's proposed instructions, *see Ravenell*, 66 F.4th at 481–82, the nature of the alleged conspiracy bears importantly on the question here. This was a non-overt act conspiracy. *See Whitfield v. United States*, 543 U.S. 209, 219 (2005). A statute of limitations defense in a non-overt act conspiracy requires an affirmative showing of discontinuation or abandonment by the defendant. *See United States v. Walker*, 796 F.2d 43, 49 (4th Cir. 1986). There was no such showing here.

The facts are detailed in the panel opinion, but to summarize, Ravenell, a defense attorney, acted in concert with his law firm's clients in a years-long money laundering scheme involving drug proceeds. One such client was Richard Byrd, a major marijuana dealer. Evidence at trial showed that Ravenell advised Byrd how to launder drug proceeds through other business ventures, and later Ravenell personally laundered these proceeds through his law firm's trust accounts on Byrd's behalf. Another client was Leonaldo Harris. Ravenell accepted drug proceeds as part of Ravenell's representation of Harris.

From the evidence adduced at trial, it is clear that there was no showing of an abandonment on the part of the defendant of his membership in the conspiracy or affirmative showing of discontinuation before the relevant limitations period. Ravenell offered no affirmative evidence showing termination or withdrawal, and trial evidence

shows just the opposite. The jury heard testimony, for example, that Ravenell demanded more drug proceeds to keep representing Harris after Ravenell's law firm received a payment from Harris in April 2014. *See Ravenell*, 66 F.4th at 485; J.A. 2094–95.

And even further, if this was an overt act conspiracy, which it was not, there were overt acts taken within the statutory limitations period. Among other things, the jury heard evidence that (1) in August 2014, Ravenell made a payment to a towing company on behalf of and related to his representation of Byrd, *Ravenell*, 66 F.4th at 484; J.A. 1321, 3328–31; (2) drug proceeds credited to Byrd remained in Ravenell's firm's trust accounts past July 2014, *Ravenell*, 66 F.4th at 484; J.A. 3328–32; Supp'l App'x at 124–27; and (3) Ravenell did not withdraw as Byrd's or Harris' attorney until October and November 2014, respectively, *Ravenell*, 66 F.4th at 484–85; Supp'l App'x at 92, 129. These acts not only show further that Ravenell neither terminated the conspiracy nor withdrew from it, but they also show "[a]cts in furtherance of a criminal conspiracy" that "enable[d] it to continue its operations" during the applicable period. *See United States v. Smith*, 452 F.3d 323, 335 (4th Cir. 2006).

The dissenting opinion disputes these facts but cannot dispute the governing law. There is no reasonable argument that the district court erred in applying the appropriate law for non-overt act conspiracies. The opinions reveal only an argument about the facts of the case, as to which I believe the panel majority is quite correct, but which in all events does not make for the kind of dispute we need to sit en banc.

I do think it crucial that we give the accused a fair trial and appeal, which we emphatically did here. He had, and deserved, a wholly fair trial. To vary from settled standards of review and settled principles of conspiracy law here would be unwarranted.

FRAP 35 has reserved the en banc process for questions of "exceptional importance." Fed. R. App. P. 35(a)(2). While every case is important, every case cannot, by definition, involve a question of "exceptional importance," which is what FRAP 35 requires. The opinions make clear that this fact-intensive dispute is simply not that kind of case. The jury reviewed the facts and understood that attorneys must not participate in and profit from a client's illicit drug deals. The lawyer is the champion of the accused in court, not a co-conspirator. To conclude otherwise would weaken the foundations of our adversary system and the confidence that jurors must necessarily possess in the independence of those who undertake the vindication of Sixth Amendment rights in our criminal justice system.

GREGORY, Circuit Judge, with whom Judge KING, Judge WYNN, and Judge THACKER join, dissenting from the denial of rehearing en banc:

A jury convicted Kenneth Ravenell of participating in a money laundering conspiracy, an offense subject to 18 U.S.C. § 3282(a)'s five-year statute of limitations. Despite Ravenell's requests, the district court refused to instruct the jury on the limitations period. The jury thus had no way of knowing that Congress set a temporal limit on Ravenell's criminal exposure and, in turn, could not determine whether that limit barred Ravenell's conviction.

Ravenell appealed, and a divided three-judge panel of this Court affirmed his conviction. Today, this Court denies Ravenell's petition for rehearing en banc, which the Federal Rules of Appellate Procedure authorize when "the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a)(2). Because the district court's refusal to instruct the jury on the statute of limitations stifled the jury's ability to weigh Ravenell's guilt, and I am hard-pressed to think of a question of greater importance than the subjugation of an accused's constitutional right to a jury trial, I dissent.

I.

As explained in the panel opinion, this case involves the criminal prosecution of Kenneth Ravenell, a criminal defense attorney, and his ultimate conviction for money laundering conspiracy. *See United States v. Ravenell*, 66 F.4th 472 (4th Cir. 2023). Ravenell appealed his conviction on several grounds, including that the district court erred by refusing to instruct the jury on the five-year statute of limitations governing the conspiracy. The limitations period had long been relevant to the case; before Ravenell was

7

indicted in September 2019, Ravenell and the government agreed to toll the limitations period from July 2, 2019, until October 2, 2019. Based on that agreement, Ravenell could only be convicted of a conspiracy that continued beyond July 2, 2014.

During the charge conference, therefore, Ravenell requested a jury instruction on the statute of limitations. The district court declined Ravenell's request, precluding the jury from determining whether, based on the evidence it saw and heard, the conspiracy continued into the limitations period. Nor did the district court, in declining to give the instruction, grapple with whether the record evidence established a conspiracy within the bounds of the statute of limitations. Rather than determine whether the instruction was supported by the record, the court simply explained that it would not give the instruction because "the burden of proof" and "issues like withdrawal" had not "been properly framed for the jury." J.A. 2880.

The panel majority upheld the district court's decision, in part because money laundering conspiracy is a non-overt act conspiracy. In the majority's view, the instruction was unnecessary because, once the government proved that an agreement occurred, continuation into the limitations period was presumed unless Ravenell could show withdrawal from or termination of the conspiracy. *Ravenell*, 66 F.4th at 482–83. The majority also determined that Ravenell's proffered limitations instruction was legally deficient, *id.* at 481–82, and that there was evidence indicating that the conspiracy continued beyond July 2, 2014, *id.* at 483–85. This Court thus affirmed Ravenell's conviction, and Ravenell's petition for rehearing en banc followed.

8

II.

"The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time" to "protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time." *Toussie v. United States*, 397 U.S. 112, 114 (1970). In enacting the statute of limitations applicable here, 18 U.S.C. § 3282(a), Congress did not distinguish between defendants based on the reprehensibility of their alleged crime or the strength of the government's case against them. Rather, the statute of limitations applies to all "person[s]" being prosecuted "for any offense, not capital," "[e]xcept as otherwise expressly provided by law." 18 U.S.C. § 3282(a). In other words, the statute of limitations—like "[t]he procedural protections of the Constitution"—"protect[s] the guilty as well as the innocent." *Minnick v. Mississippi*, 498 U.S. 146, 166 (1990) (Scalia, J., dissenting).

Nobody disputes, therefore, that the five-year statute of limitations applies to the money laundering conspiracy charge against Ravenell. Yet by declining to instruct the jury on the limitations period, the district court overrode Congress's intent to set limits on criminal liability and took a pivotal determination out of the jury's hands. That is, because "[j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law," such as whether "the action in question is . . . time barred," the jury could not divine the existence of the statute of limitations absent such an instruction. *Griffin v. United States*, 502 U.S. 46, 59 (1991). And as a result, the jury in

9

Ravenell's case could not weigh (let alone understand) the temporal significance of the trial evidence.

Simply put, the jury's inability to make such a critical finding of fact bears on a "question of exceptional importance," Fed. R. App. P. 35(a)(2), warranting en banc review. By preventing jurors from considering the statute of limitations, the district court implicated nothing less than the Sixth Amendment's promise of a "trial[] by an impartial jury." U.S. Const. amend. VI. The Constitution establishes "trial by jury of criminal charges as a bedrock safeguard of the people's liberties," *Jackson v. Denno*, 378 U.S. 386, 405 (1964) (Black, J., dissenting in part and concurring in part), and an embodiment of the nation's "democratic ideals," *Thiel v. S. Pac. Co.*, 328 U.S. 217, 220 (1946). That promise, "fundamental to the American scheme of justice," *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968), entitles a defendant "to have the issue of criminal liability determined by a jury in the first instance," *McCormick v. United States*, 500 U.S. 257, 270 n.8 (1991).

Courts are entrusted with bringing the Sixth Amendment's guarantee to bear through their administration of criminal trials. The court's "instruct[ing] the jury clearly regarding the law to be applied in the case," *United States v. Lewis*, 53 F.3d 29, 34 (4th Cir. 1995), is, in my view, one prerequisite to fulfilling a defendant's jury trial right. Without proper "instructions as to the law, the jury becomes mired in a factual morass, unable to draw the appropriate legal conclusions based on those facts," *id.*, and the Sixth Amendment's guarantee rings hollow. But, as the Supreme Court has recognized, "the promise of a jury trial surely meant *something*—otherwise, there would have been no

reason to write it down." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1395 (2020). So, pursuant to their obligation to preserve that promise, courts must ensure that jurors are properly informed of the laws governing a defendant's criminal exposure. The district court's failure to do so in Ravenell's case, and the majority's affirmance of that decision, strikes at the heart of Ravenell's "fundamental constitutional right" to a jury trial. *Horner v. Nines*, 995 F.3d 185, 198 (4th Cir. 2021).

It is therefore unsurprising that the National Association of Criminal Defense Lawyers ("NACDL") submitted an amicus brief in support of Ravenell's petition for rehearing. As the NACDL put it: "As a result" of the panel majority's opinion, "future criminal defendants in this circuit may suffer the same fate as Mr. Ravenell: the denial of the constitutional right to have a jury decide if the government has proved beyond a reasonable doubt that the prosecution does not violate the statute of limitations." NACDL Br. 2. En banc rehearing is necessary "[t]o uphold the basic rights of the accused." *Id.* at 11.

The panel majority's opinion might obscure the high stakes of this case by focusing on the nature of the conspiracy of which Ravenell was convicted. To be sure, my colleagues are correct that Ravenell was convicted of a non-overt act conspiracy and, therefore, the government was not required to prove that an overt act occurred within the limitations period. As an initial matter, however, their focus on this detail—and their efforts to distinguish this case from those where we have reversed a district court's failure to instruct on a statute of limitations in an overt act conspiracy, *see United States v. Head*, 641 F.2d 174, 179 (4th Cir.

1981)—demonstrates that the refusal to provide a limitations instruction in a non-overt act conspiracy presents a novel question meriting en banc consideration.

More fundamentally, though, this distinction does not nullify the statute of limitations for a non-overt act conspiracy. Rather, it bears only on how continuation into the limitations period is proven (here, Ravenell must demonstrate that he withdrew from the conspiracy, or the conspiracy terminated, before July 2, 2014). And, as I discussed in my dissent from the panel opinion affirming Ravenell's conviction, there are numerous facts in the record supporting Ravenell's argument that the conspiracy terminated outside of the limitations period. *See Ravenell*, 66 F.4th at 498–99 (Gregory, C.J., dissenting).

The panel majority disputes this by pointing to evidence of the conspiracy's continuation, such as Ravenell's status as counsel of record for his clients and alleged co-conspirators, Richard Byrd and Leonaldo Harris, until October and November 2014, respectively. The conclusion that any instructional error would be harmless based largely on evidence of Ravenell's attorney-client relationships threatens to undermine one of the Sixth Amendment's other fundamental protections for criminal defendants: "the right to . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. But even more, that the panel majority takes a different view of the record only further proves that the factual question regarding termination was for the jury, not the Court, to decide. At bottom, this "fact-intensive dispute," in the words of today's concurring opinion, *ante* at 4, raises the precise evidentiary issues that "jurors *are* well equipped to analyze," *Griffin*, 502 U.S. at 59.

*     *     *

Recognizing "that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority," our Constitution's framers enshrined the right to a jury as an "inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." *Duncan*, 391 U.S. at 156. It would appear, then, that the concerns underlying the jury trial right are of heightened relevance in cases where, as here, the defendant is an attorney and his case triggers public scrutiny. Ravenell's right to have his guilt determined by a jury of his peers should have been jealously guarded. But instead, the district court undermined that right by taking a crucial determination regarding Ravenell's criminal exposure out of the jury's hands entirely.

"In this situation, rehearing en banc was vital to 'secure the individual from the arbitrary,'" and to preserve the jury's critical factfinding function in this and future cases. *United States v. Dix*, 69 F.4th 149, 154 (4th Cir. 2023) (King, J., dissenting from denial of rehearing en banc) (quoting *Bank of Columbia v. Okely*, 17 U.S. 235, 244 (1819)). By denying rehearing, the Court risks whittling away at a constitutional right that has, since our nation's earliest days, played a foundational role in our pursuit of justice. Accordingly, I respectfully dissent.